Matter of Pomponio (Getty Images (US) Inc.--Commissioner of Labor) (2020 NY Slip Op 04211)





Matter of Pomponio (Getty Images (US) Inc.--Commissioner of Labor)


2020 NY Slip Op 04211


Decided on July 23, 2020


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: July 23, 2020

528636

[*1]In the Matter of the Claim of Michael Pomponio Jr., Respondent. Getty Images (US) Inc., Appellant. Commissioner of Labor, Respondent.

Calendar Date: June 12, 2020

Before: Garry, P.J., Egan Jr., Mulvey, Aarons and Colangelo, JJ.


Garvey Schubert Barer, PC, New York City (Andrew J. Goodman of counsel), for appellant.
David E. Woodin, Catskill, for Michael Pomponio Jr., respondent.



Colangelo, J.
Appeal from a decision of the Unemployment Insurance Board, filed January 30, 2019, which ruled, among other things, that Getty Images (US) Inc. was liable for additional unemployment insurance contributions on remuneration paid to claimant and others similarly situated.
Getty Images (US) Inc. is a photography and wire service company that provides images to the media. For a number of years, it participated in fashion week, which takes place for 10 days each February and September in New York City. During fashion week, Getty set up a temporary tent complex in Lincoln Center and retained the services of individuals, known as runners, to physically transport digital image cards from photographers at various fashion shows to its photo editors at the Lincoln Center complex. Getty hired claimant to work as a runner during fashion week in February 2013, September 2013 and February 2014. When claimant stopped working as a runner, he filed a claim for unemployment insurance benefits. The Department of Labor undertook a review of claimant's status and issued a determination finding that claimant was an employee of Getty and that Getty was responsible for contributions on remuneration paid to him and others similarly situated. Getty objected to the determination and requested a hearing.
Following a January 2015 hearing, an Administrative Law Judge (hereinafter ALJ) issued a default decision sustaining the initial determination due to the unavailability of one of Getty's witnesses, but granted Getty leave to apply for reopening. In March 2015, another hearing was conducted before the same ALJ, but it ended abruptly due to a disagreement between the ALJ and Getty's counsel. In April 2015, a hearing was conducted before a different ALJ. At this hearing, Getty's counsel raised, for the first time, the issue of claimant's eligibility for benefits. The ALJ ultimately granted Getty's application to reopen, but sustained the initial determination finding Getty liable for additional unemployment insurance contributions and found that claimant was entitled to receive benefits. Getty appealed this decision to the Unemployment Insurance Appeal Board. The Board upheld the ALJ's decision, but referred the issue of claimant's eligibility for benefits back to the Department for further investigation. Getty appeals.[FN1]
Initially, Getty contends that the Board issued a gratuitous advisory opinion regarding the existence of an employment relationship because claimant was not, in the first instance, eligible for benefits, as he failed to file a valid original claim. We are not persuaded. The issue of claimant's eligibility for benefits was not addressed in the initial determination issued by the Department assessing Getty for additional contributions. Moreover, Getty did not raise this issue in its letter requesting a hearing. Although Getty did raise the issue before the ALJ and some evidence related to it was presented at the hearing, the record was not fully developed. Accordingly, the Board properly remitted the matter to the Department for further investigation. In rendering its decision, the Board addressed the issue that was before it, namely, the existence of an employment relationship, and its decision in this regard was in no way advisory.
Turning to the merits, it is well settled that the existence of an employment relationship is a factual issue for the Board and its determination will be upheld if supported by substantial evidence (see Matter of Vega [Postmates, Inc.-Commissioner of Labor], ___ NY3d ___, ___, 2020 NY Slip Op 02094 [2020]; Matter of Empire State Towing & Recovery Assn., Inc. [Commissioner of Labor], 15 NY3d 433, 437 [2010]; Matter of Bloomfield [IME Watchdog, Inc.-Commissioner of Labor], 175 AD3d 1650, 1651 [2019]). "Although no single factor is determinative, the relevant inquiry is whether the purported employer exercised control over the results produced or the means used to achieve those results, with control over the latter being the more important factor" (Matter of Magdylan [Munschauer-Commissioner of Labor], 172 AD3d 1832, 1833 [2019] [internal quotation marks and citations omitted]; see Matter of Kriplin [Community Newspaper Group, LLC-Commissioner of Labor], 173 AD3d 1571, 1572 [2019]).
Here, evidence was presented that Getty retained runners during fashion week for the sole purpose of retrieving digital image cards from photographers and delivering them to Getty's photo editors. Getty assigned two runners to cover each 10 to 12-hour shift provided them with schedules of the fashion shows that they were to cover. The runners decided how to divide the work between them and determined the manner of getting from location to location. However, if there was a conflict between the runners, it would be resolved by a Getty manager. Getty did not provide the runners with formal training, but did provide instructions on the tasks to be performed. Getty paid the runners a fixed rate of $150 per day and reimbursed them for travel expenses. In the event that a full day of a show was cancelled, Getty compensated the runners half of their daily rate. Although Getty did not directly supervise the runners, it contacted them if a digital image card was not properly delivered. Because there was an interview and review process for selecting runners, they were not permitted to pick a replacement if they were unable to cover a shift. In addition, Getty provided the runners with envelopes bearing its name to be used to transport the digital image cards from the shows to its photo editors. It also provided them with identification cards bearing its name so that they could get past security and gain access to the shows. The foregoing indicates that Getty exercised the requisite indicia of control over the work of the runners to be deemed their employer, notwithstanding evidence in the record supporting a contrary conclusion (see Matter of Gill [Strategic Delivery Solutions, LLC-Commissioner of Labor], 134 AD3d 1362, 1364 [2015]). Therefore, we find that substantial evidence supports the Board's decision and we decline to disturb it.
Garry, P.J., Egan Jr., Mulvey and Aarons, JJ., concur.
ORDERED that the decision is affirmed, without costs.



Footnotes

Footnote 1: Although claimant asserts that the appeal should be dismissed because Getty failed to move to reopen the default entered by the ALJ following the March 2015 hearing, the record does not indicate that a second default decision was ever filed.